URSULA R. YOUNG AND EDWIN J. YOUNG, PLAINTIFFS v. WILLIAM H. STEWART, JR. AND A-1 SERVICES, LTD., DEFENDANTS

No. 9010SC274

(Filed 15 January 1991)

**Damages § 13.2 (NCI3d) — injured plaintiff as partner in business — earning capacity · evidence excluded — error**

In an action to recover for injuries sustained in an automobile accident, the trial court erred in ruling that plaintiff's earning capacity evidence was inadmissible where the evidence tended to show that plaintiff and another person had formed a real estate partnership in which they were the only employees; each year the two placed all commissions earned by either of them in the partnership and, after subtracting certain expenses, divided the remainder equally; their commissions were not individually assigned to each partner; and the profits thus resulted from the personal efforts, attention, skill and connections of the two parties.

**Am Jur 2d, Damages §§ 937-939.**

**Profits of business as factor in determining loss of earnings or earning capacity in action for personal injury or death. 45 ALR3d 345.**

APPEAL by plaintiffs from order entered 10 November 1989 in WAKE County Superior Court by *Judge Wiley F. Bowen* granting defendants' motion for a new trial on the issue of damages. Heard in the Court of Appeals 27 September 1990.

Plaintiffs' negligence action against defendants arises out of an automobile accident in which defendant Stewart, operating a truck owned by defendant A-1 Services, collided with the rear of a car owned and occupied by plaintiff Ursula Young. Prior to the accident Ursula Young [hereinafter plaintiff] had worked as a real estate broker. Plaintiff and Jim Barlow had formed a real estate partnership known as B & Y Associates in which the two were the only employees. Each year the two placed all commissions earned by either of them in the partnership and, after subtracting certain expenses, divided the remainder equally. Their commissions were not individually assigned to each partner, and neither partner had a separate list of clients from which commissions were generated.

YOUNG v. STEWART

[101 N.C. App. 312 (1991)]

Prior to the accident, plaintiff had been in good health and had worked long hours—60 to 80—hours a week since entering the real estate business in 1977. Plaintiff's total income from B & Y Associates and other sources, including commissions from two German investors for whom she worked outside the real estate partnership, for 1983 was $36,996.93; 1984, $39,252.23; 1985, $35,047.04; and for 1986 was $34,680.65. As a result of the accident, plaintiff suffered from a permanent impairment to her spine and from lower back pain. Following the accident, B & Y's earnings and commissions were greatly reduced and the real estate partnership technically dissolved in April 1987.

Plaintiff offered evidence through expert witness J. C. Poindexter, an economics professor at North Carolina State University. Poindexter reviewed plaintiff's individual and B & Y Associates' tax records in calculating plaintiff's future lost earnings from real estate. Plaintiff's earnings were readily ascertainable to include 50 percent of the gross commissions of B & Y Associates. Poindexter testified that plaintiff's average yearly taxable income for the years 1983 through 1986 was $27,049.00. He predicted an average yearly future income of $16,771.00. After hearing evidence regarding the nature of plaintiff's injuries and her damages, including lost earnings and lost earning capacity, the jury returned a verdict in the amount of $139,505.00 for injuries suffered by plaintiff.

Pursuant to Rules 50 and 59 of the North Carolina Rules of Civil Procedure, defendants moved for entry of judgment notwithstanding the verdict, or, in the alternative, for an order setting aside the verdict and for a new trial. At a 10 November 1989 hearing, the court denied defendants' motions for judgment notwithstanding the verdict, to set aside the verdict, and new trial on the issue of negligence, but granted defendants' motion for new trial on the issue of plaintiff's damages.

Among its findings entered pursuant to Rule 52, the court found the following facts: Plaintiff worked solely on a commission basis, and all commissions were paid into B & Y Associates. No evidence was introduced at trial to show what portion of the commissions paid into B & Y Associates was actually generated by plaintiff's efforts. Plaintiff's evidence presented on the issue of plaintiff's lost income and lost earning capacity was insufficient to go to the jury and the verdict was contrary to law. The testimony of plaintiff's witness, J. C. Poindexter, as to plaintiff's lost income

and lost earning capacity should have been excluded as speculative and confusing to the jury. Plaintiffs appeal.

*Leonard T. Jernigan, Jr. for plaintiffs-appellants.*

*LeBoeuf, Lamb, Leiby & MacRae, by Kurt E. Lindquist II and Stephanie C. Hutchins, for defendants-appellees.*

WELLS, Judge.

In their first assignment of error, plaintiffs contend the trial court erred in finding plaintiff Ursula Young's lost earning capacity evidence insufficient to go to the jury and that the verdict was not supported by the evidence and contrary to law. Defendants contend the order from which plaintiffs appeal is discretionary and is subject to review only for abuse of discretion. However, the decision is reviewable where the trial judge grants or refuses to grant a new trial based on some question of law or legal inference which the judge decides. *Hunnicutt v. Griffin*, 76 N.C. App. 259, 332 S.E.2d 525 (1985). In granting defendants' motion for new trial on damages, the trial court's decision was premised on the erroneous ruling that plaintiff Ursula Young's earning capacity evidence was inadmissible. Therefore, this ruling is reviewable as a matter of law.

A person engaged in a business who is injured by the negligence of another may recover lost earnings. However, as a general rule a person cannot recover lost business profits. A major exception to this general rule is that evidence of lost business profits is admissible as evidence of plaintiff's lost earning capacity in a proper case where the business earnings are due predominantly to a person's personal efforts and not from capital investment or employee labor. *Smith v. Corsat*, 260 N.C. 92, 131 S.E.2d 894 (1963), summarizes North Carolina law and states in part:

> In personal injury actions great latitude is allowed in the introduction of evidence to aid in determining the extent of the damages, and as a broad general rule any evidence which tends to establish the nature, character and extent of injuries which are the natural and proximate consequences of the tortfeasor's acts is admissible in such actions, if otherwise competent. . . . In determining future earning capacity, prior earnings are admissible in evidence if there is a reasonable relation between past and probable future earnings. . . .

It is a generally accepted proposition that evidence of the profits of a business in which the injured party in a personal damage suit is interested, which depend for the most part upon the employment of capital, the labor of others, and similar variable factors, is inadmissible in such suit and cannot be considered for the purpose of establishing the pecuniary value of lost time or diminution of earning capacity, for the reasons that a loss of such profits is not the necessary consequence of the injury and such profits are uncertain and speculative. In such circumstances loss of profits cannot be considered either as an element or the measure of damages. In such case, the measure of damages is the loss in value of the injured person's services in the business. "Profits" and "earnings" are not synonymous. Loss of personal earnings is properly considered as an element of measure of damages. . . .

However, where the business is small and the income which it produces is principally due to the personal services and attention of the owner, the earnings of the business may afford a reasonable criterion to the owner's earning power. . . . In cases where it is not established that the employment of capital, the use of labor of others, or similar variable factors were predominant in the injured person's business or determinative, for the most part, of the receipts realized, it is held that evidence of profits, in a restricted sense, or income (even if one or more of the factors mentioned were present and influential) may be used for the purpose of aiding in establishing a standard for the calculation of damages, if it conforms to the requirements of proximate cause and certainty. It has some bearing upon the question of damages, whether of loss of time or loss or diminution of earning capacity. Such evidence furnishes as safe a guide for the jury, under proper cautionary instructions, as in helping to determine the pecuniary value of loss of time or impairment of earning capacity. (Citations omitted).

The Court in *Smith v. Corsat* held plaintiff's evidence regarding business earnings from his small record selling company was admissible since the "predominating factors in the production of the business' profits were the attention, efforts, skill, connections and personal attributes of defendant, and that the employment of capital and the labor of others played a very small part. . . ." *Smith v. Corsat, supra.*

YOUNG v. STEWART

[101 N.C. App. 312 (1991)]

This Court has held that various cases fit into this exception and has approved the admission of evidence of business earnings to show lost earning capacity resulting from negligently inflicted injury. In *Griffin v. Disco, Inc.*, 49 N.C. App. 77, 270 S.E.2d 613 (1980), the Court held admissible evidence of plaintiff's business earnings where plaintiff owned and operated a paint and body shop and employed only one laborer. In *Rolling Fashion Mart, Inc. v. Mainor*, 80 N.C. App. 213, 341 S.E.2d 61 (1986), the Court stated that evidence of business earnings of a small door-to-door sales company, having only one employee—its president—would be admissible in a suit for lost earning capacity brought by its president. In *Smith v. Pass*, 95 N.C. App. 243, 382 S.E.2d 781 (1989), the Court held admissible evidence of plaintiff's van pool business earnings. The common thread in all of these cases is that each plaintiff's business earnings resulted from the personal efforts of the plaintiff and not from employment of capital or labor of others.

The evidence in this case tended to show that the profits from B & Y Associates were generated through the personal efforts of Jim Barlow and Ursula Young. No evidence was offered to suggest that B & Y Associates' profits were generated from capital investments or employee labor. No evidence was offered to contradict the evidence that B & Y Associates' profits were a result of anything but the attention, efforts, skill and connections of the two partners.

Notwithstanding these facts, defendants contend that because B & Y Associates' commissions cannot be traced back as generated by either partner personally, that the evidence is insufficient for jury consideration as a matter of law. We disagree. Other states have held admissible the evidence of partnership profits as long as the profits were generated by personal services and not the result of capital investments and employee labor. *Faber v. Gimbel Bros.*, 107 A. 222, 264 Pa. 1 (1919); *Thomas v. Union RY Co. of New York City*, 18 A.D. 185, 45 NYS 920 (1897); and as long as the future profits could be estimated with reasonable certainty. *Chicago, R.I. & P. RY. Co. v. Scheinkoenig*, 62 Kan. 57, 61 P. 414 (1900); *Normandin v. Kansas City*, 206 S.W. 913 (Mo. 1918). To hold otherwise would unreasonably and unfairly deny recovery of lost earning capacity for persons engaged in business partnerships.

Plaintiffs offered sufficient evidence of past earnings from which the jury could determine with reasonable certainty the profits of

B & Y Associates. The B & Y Associates' business records offered into evidence reflect that those profits fluctuated very little during the years preceding the accident. *Smith v. Pass*, 95 N.C. App. 243, 382 S.E.2d 781 (1989) (holding that even testimony lacking business records does not render evidence too speculative). Defendant had full opportunity to cross-examine plaintiffs and plaintiffs' expert witness in order to challenge the estimates. *See Peterson v. Johnson*, 28 N.C. App. 527, 221 S.E.2d 920 (1976).

Plaintiffs also assign as error the trial court's finding that Dr. Poindexter's testimony regarding plaintiff Ursula Young's earning capacity was speculative and prejudicial. The trial court's finding was clearly based on the erroneous belief, discussed above, that plaintiff Ursula Young's earning capacity evidence was incompetent and inadmissible. For the reasons stated, the trial court's order granting defendants a new trial on the issue of damages is

Reversed.

Judges COZORT and LEWIS concur.